## UNITED STATES v. GENERAL CIGAR CO., Inc., et al.

### No. 4310.

District Court, E. D. Pennsylvania.

Jan. 15, 1945.

Gerald A. Gleeson, U. S. Atty, of Philadelphia, Pa., for the United States.

Samuel A. Goldberg (of Wolf, Block, Schorr & Solis-Cohen), of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This is an action for an injunction brought by the United States of America to restrain violations of the Act of Congress of June 28, 1940, 54 Stat. 676, entitled "An Act to Expedite National Defense, and for Other Purposes," as amended by the Act of Congress of May 31, 1941, 55 Stat. 236, herein referred to as the "National Defense Act," and as amended by the Act of Congress of March 27, 1942, 56 Stat. 176, 50 U.S.C.A.Appendix § 631 et seq., entitled "An Act to Further Expedite the Prosecution of the War," herein referred to as the "Second War Powers Act, 1942," and of regulations and orders issued thereunder as hereinafter more fully set forth.

The jurisdiction of this Court is based upon Section 24(1) of the Judicial Code, Section 41(1), 28 U.S.C.A. and the Second War Powers Act, 1942, mentioned above.

The defendant, General Cigar Company, Inc., is a corporation organized and existing by virtue of the laws of the State of New York, with its principal place of business at 119 West 40th Street, New York. The defendant is engaged in business in the Commonwealth of Pennsylvania, with its principal office at 33 Race Street, Lancaster, Pennsylvania, where it maintains an office for the purpose of purchasing tobacco for its manufacturing needs.

The sole question for determination is whether certain agreements entered into by the defendant, General Cigar Company, Inc., acting through the defendant, George Carmin, with tobacco growers in Lancaster County, Pennsylvania, to pack and otherwise process tobacco of the 1944 crop, are in violation of War Food Order No. 4—6, as amended, prohibiting the purchasing, contracting to purchase or accepting an option to purchase cigar filler type 41.

The parties have stipulated that this action may be submitted for final decree upon the pleadings and exhibits, following a hearing held this day, January 15, 1945.

Accordingly I make the following findings of fact:

1. The War Food Administration of the United States on June 13, 1944, issued War Food Order No. 4—6 effective June 14, 1944, and on December 9, 1944, made certain amendments to the said order effective December 10, 1944.

2. War Food Order No. 4—6, as amended, prohibits the purchasing, contracting to purchase or accepting an option to purchase cigar filler type 41 during its effective term.

3. General Cigar Company is a manufacturer of cigars and in such manufacture uses type 41 tobacco.

4. George Carmin was and is in charge of the Leaf Tobacco Department of the General Cigar Company in Lancaster County, Pennsylvania.

5. War Food Order No. 4—6 was on or about January 4, 1945, and is presently in full force and effect.

6. On or about January 4, 1945, the defendant, General Cigar Company, acting through the defendant, George Carmin, began to enter into agreements with tobacco growers in Lancaster County, Pennsylvania, substantially in a form as set forth in Exhibit "A" hereto annexed.

### Discussion

In accordance with authority vested in him by appropriate Executive Orders the War Food Administrator issued War Food Order No. 4—6. The purpose of this order was to assure an adequate supply and equitable distribution of certain types of tobacco, including cigar filler type No. 41. The order prohibited the purchase, the contracting to purchase or accepting an option to purchase such tobacco as long as the order remained in effect. The purpose was obviously to prevent a scramble for the limited supply of this tobacco.

While the contracts entered into by the defendant manufacturer with the growers are agreements to pack and otherwise process the tobacco of such growers and do not purport to be agreements to purchase such tobacco, the practical effect thereof is to give the manufacturer an advantage over others and may result in it obtaining an unfair share of the crop.

▮▮ Therefore the contracts in question violate the purpose of War Food Order No. 4—6, and should be held void, illegal and unenforceable and the carrying out thereof should be enjoined.

Accordingly I state the following conclusion of law:

The entering into contracts between General Cigar Company and tobacco growers in the form attached hereto marked Exhibit "A" constitutes a violation of War Food Order No. 4—6, as amended, and such contracts are null, void and unenforceable.

An injunction may issue.

An order may be submitted in accordance with this opinion.

### EXHIBIT "A"

#### COPY OF AGREEMENT

The copy of the agreement read at the meeting follows:

"Place ———
"Date ——— 1945

"Agreement made the day and year above written between General Cigar Co., Inc., a New York Corporation (hereinafter called General and ——— of ——— (hereinafter called the Owner) who hereby warrants that he has authority to deliver and subsequently dispose of all the tobacco described in this contract.

"The owner agrees to deliver his ——— acre 1944 crop of Pennsylvania tobacco, Type 41, to General's warehouse.

"General agrees to pack and otherwise process the tobacco so delivered for use in the manufacture of cigars, and to keep such tobacco of the Owner separate under the Owner's name, except farm low grades. Title to and risk of loss of the tobacco shall remain with the owner, but General agrees to insure the tobacco for the account of the Owner against direct loss or damage by fire under General's usual insurance policy.

"The owner agrees to pay 2¢ per lb., receiving weight, for performing the aforesaid services. When the packed tobacco is sold, the Owner may add the 2¢ per lb. to his selling price.

"The Owner represents and warrants to General that there are no mortgages, liens or encumbrances of any kind on his crop except ———

"General agrees to loan the Owner when the tobacco is delivered to General's warehouse an amount (after deducting the amount of any prior encumbrances) equivalent to the sum of 21¢ per lb. for Wrap-

per B's, 11¢ per lb. for stripped straight tobacco and 7¢ per lb. for farm fillers of the crop so delivered, receiving weight.

"It is further agreed that General shall have a lien on said tobacco until all processing charges as well as all monies advanced pursuant to this agreement are fully paid, and no tobacco shall be removed from General's possession until all charges are paid.

"General Cigar Co., Inc.,

"By ————.

"Packer:"